CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 19 2017
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTWOINE MCKINLEY JONES, | ) | CASE NO. 7:17CV00059 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD W. CLARKE, | ) | By: Hon. Glen E. Conrad |
| | ) | United States District Judge |
| Respondent. | ) | |

Antwoine McKinley Jones, a Virginia inmate proceeding by counsel, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a final order by the Danville City Circuit Court. Respondent filed a motion to dismiss, and Jones responded, making the matter ripe for disposition. After review of the record, the court concludes that the petition must be dismissed.

## I. Background

After a bench trial, the Danville City Circuit Court found Jones guilty of forcible sodomy, indecent liberties with a minor with whom he had a custodial relationship, attempted rape, attempted incest,[1] and object sexual penetration. The circuit court sentenced Jones to ten years as to each conviction, with five years suspended on each count. Jones appealed, arguing that the testimony of the victim, who was ten years old at the time she testified, was "inherently incredible" for various reasons, but the Court of Appeals of Virginia denied his petition. Jones then raised a single claim of unreliable testimony in the Supreme Court of Virginia, but the court declined review.

---

[1] Jones was convicted of attempted incest in open court; however, the original conviction and sentencing order erroneously stated that he was convicted of incest. The error was later corrected in Jones's initial state habeas proceeding.

After his direct review proceedings ended, Jones filed a habeas petition in the Supreme Court of Virginia, raising six ineffective assistance of counsel claims. On January 12, 2009, the court issued "a limited grant of the writ habeas corpus" as to Jones's fourth claim: counsel was ineffective for failing to object to the court finding him guilty of incest when he was charged with attempted incest, remanding the case to the circuit court to correct the conviction order and for a new sentencing hearing as to the attempted incest conviction. Jones v. Warden, No. 081315, slip op. at 2 (Va. Cir. Ct. Jan. 12, 2009). The Supreme Court of Virginia denied all remaining claims on the merits.

On April 21, 2009, after the Supreme Court of Virginia's limited grant of habeas relief, but before the resentencing, Jones filed a federal habeas petition raising three claims of ineffective assistance and two claims challenging the sufficiency of the evidence.

On June 22, 2009, before the state court re-sentenced Jones on his attempted incest conviction, the Commonwealth moved the circuit court to re-sentence Jones on his indecent liberties conviction because the sentence originally imposed exceeded the statutory maximum.[2] On July 28, 2009, the Danville City Circuit Court entered a nunc pro tunc order effective February 27, 2006, (the entry date of the original sentencing order) correcting the attempted incest conviction and reducing the associated sentence to five years, with no time suspended.

Thereafter, the circuit court held an additional re-sentencing hearing as to both the attempted incest and indecent liberties convictions. On December 15, 2009, the court reimposed a five-year sentence on the attempted incest conviction and reduced the indecent liberties

---

[2] Jones had been sentenced to ten years incarceration with five years suspended. However, indecent liberties is a Class 6 felony and subject to a maximum punishment of five years' incarceration.

conviction to five years, with two-and-a-half years suspended. Jones appealed, but on December 2, 2010, the Court of Appeals of Virginia denied his appeal, and on July 11, 2011, the Supreme Court of Virginia refused his petition.

Meanwhile, on March 19, 2010, the federal district court denied Jones habeas relief,[3] which the United States Court of Appeals for the Fourth Circuit affirmed.[4]

On August 20, 2015, Jones filed a second state habeas petition in the Danville City Circuit Court, which was denied as procedurally defaulted under Va. Code § 8.01-654(B)(2) and without merit. The Supreme Court of Virginia denied Jones's appeal.[5]

## II.  Current Petition

On February 15, 2017, Jones filed the instant petition, raising three claims:

1. The Commonwealth failed to disclose exculpatory, impeachment and other evidence from the Guilford[6] records;

2. Resentencing counsel was ineffective for failing to move for a new trial on all charges based on the prosecutor's failure to disclose exculpatory evidence prior to trial; and

3. Trial counsel was ineffective for failing to request a subpoena for the Guilford records.

---

[3] Jones v. Kelly, No. 7:09CV00185 (W.D. Va. Mar. 19, 2010).

[4] Jones v. Kelly, No. 10-6619 (4th Cir. Feb. 14, 2011).

[5] The Supreme Court of Virginia assumed without deciding that Jones's petition was procedurally defaulted and affirmed the circuit court's ruling.

[6] All of Jones's claims refer to medical and other records regarding the victim, some of which were prepared by the Guilford, North Carolina Department of Social Services.

This matter is now before the court on Respondent's motion to dismiss. Respondent has conceded that Jones' petition is properly exhausted and timely. Further, the Respondent assumes without conceding that Jones's petition is not successive based on the recent holding in In re Gray, 850 F.3d 139 (4th Cir. 2017).

### III. Standard of Review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

To state a constitutional claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged Strickland v. Washington test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686-687 (1984). "Judicial scrutiny of counsel's performance must be highly

4

deferential," and counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id. at 689; United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014).[7] When reviewing a Strickland claim under the AEDPA, the court's review is "doubly" deferential. See Richter, 562 U.S. at 105.

For Strickland's first prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or common custom." Richter, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690).

For the second prong, a petitioner must demonstrate that, but for counsel's alleged error, there is a "reasonable probability that the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. Importantly, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999); see also Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996).

Lastly, to establish a Brady violation, "a convicted defendant must make each of three showings: (1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the State suppressed the evidence, 'either willfully or

---

[7] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Gentry, 540 U.S. at 8.

5

inadvertently'; and (3) 'prejudice . . . ensued.'" Skinner v. Switzer, 562 U.S. 521, 536 (2011) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). To show prejudice under Brady, the evidence must have been material. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433-34 (1995). However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 (1976).

### IV. Analysis

In Claim 1, Jones alleges that the Commonwealth violated Brady by withholding the Guilford records. Jones argues that the records exculpate him in the following ways:

1. Jones's daughter, "D.R.," did not state or allege that Jones put his finger in her vagina, contrary to her testimony at trial;

2. D.R. reported to a doctor on March 3, 2005 and to others at other times that Jones had only touched her and there was no penetration, contrary to her testimony at trial;

3. D.R. did not allege that Jones attempted to penetrate her vagina with his penis but only that he had placed his penis beside it, contrary to her testimony at trial;

4. D.R., in her handwritten notes, did not state that Jones had engaged in either oral or vaginal penetration, contrary to her testimony at trial; and

5. Dr. Stanley's report of a tear at the 6 o'clock position on D.R.'s hymen is inconsistent with Nurse Rasmussen's trial testimony of a tear on the hymen at the 7 o'clock position.

Pet'r's Pet. 11-12.

The first two prongs of Brady are at least debatable,[8] but Jones fails to demonstrate that the Guilford records are material. On habeas review, the Danville City Circuit Court held the following:

> [A]fter careful review of the Guilford records in light of the entirety of the trial record, and taking into account this Court's observation of the demeanor of the witnesses and determination of the credibility of those witnesses, the Court finds no permissible use of this evidence would have caused this Court to have disbelieved the credible evidence of the Commonwealth, including the testimony of the victim, or to have believed Jones's denial that he never had been alone with the child. The Guilford records were not material such that the outcome of Jones's trial would have been different as to either guilt or sentencing. Jones thus is entitled to no relief upon his substantive Brady claim.

Jones v. Clarke, No. CL12-596, slip op. at 3 (Va. Cir. Ct. Aug. 20, 2015). The court agrees with the state court's analysis because the Commonwealth's significant evidence of Jones's guilt still overcomes contradictions in the Guilford records and Jones's assertions that he was (1) never

---

[8] For the first prong of Brady, some parts of the Guilford records contradict D.R.'s trial testimony. For Brady's second prong, the parties dispute whether the Commonwealth actually possessed the Guilford records. In his federal habeas petition, Jones attaches shipping receipts showing that the City of Danville Police Department had received some records in April of 2005. However, on habeas review, the circuit court held that both parties "were aware at the time of trial that child welfare authorities in Guilford County investigated a claim of abuse, but the extant record does not demonstrate that the Commonwealth ever obtained [the records] prior to Jones's trial." Jones v. Clarke, No. CL12-596, slip op. at 3 (Va. Cir. Ct. Aug. 20, 2015).

7

alone with D.R. and (2) a victim of a plot by D.R.'s mother.[9] Therefore, the state court's ruling was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of the facts.

Jones first alleges that there is no evidence in the record to substantiate D.R.'s testimony that Jones had digitally penetrated her; however, D.R. wrote that after Jones tried to penetrate her with his penis, he "tough [touched] my tots [breasts] and finger[ed] me." Pet'r's App'x 15. Second, Jones asserts that the record shows that there was "no penetration," and that D.R. admitted that Jones only put his penis beside her vagina. The Guilford records indeed repeatedly state that D.R. told social workers that there was no penetration, but D.R. also made several statements indicating that Jones had used spit on her vagina as lubrication as he tried to slide into her, that her genitals hurt afterward, and that she did not want to consume liquids for fear of the pain during urination after these encounters. Pet'r's App'x 10-11. Further, sexual assault nurse Rasmussen testified that D.R.'s vagina had damage consistent with penetration, although

---

[9] The Guilford records substantially support D.R.'s testimony: (1) after D.R. initially refused Jones's advances, Jones grabbed a dictionary, looked up the word "father," and demanded that she do what he said (Trial Tr. 48; Pet'r's App'x 3, 7, 9, 14-15, 24, 26); (2) a white substance emanated from Jones's penis after the second time Jones made her put her mouth on it (Trial Tr. 74; Pet'r's App'x 9); (3) Jones ordered D.R. to perform oral sex on him (Trial Tr. 45-49, 73-74; Pet'r's App'x 3, 7-8, 9, 15, 23, 27); (4) Jones attempted to penetrate her vagina with his penis, even describing him using spit and a bottle of "vinegar" as lubrication (Trial Tr. 59; Pet'r's App'x 10); (5) Jones's finger penetrated D.R.'s vagina (Trial Tr. 67; Pet'r's App'x 15); (6) Jones "hooked" D.R.'s legs behind her head with her pants during some sexual activity (Trial Tr. 54-56, Pet'r's App'x 10, 12, 15); and (7) Jones told D.R. that his penile contact with her would only hurt the first time, but not the second (Trial Tr. 58-59; Pet'r's App'x 11).

Moreover, the Guilford records support Jones's guilt beyond the trial testimony and admitted evidence: (1) D.R. told social workers that Jones had showed her pornographic films (Pet'r's App'x 12, 15, 19 ("made me watch natye [nasty] movies")); (2) one counselor concluded that D.R. "appeared to be reporting very reliably and she certainly possessed a great deal of idiosyncratic knowledge that would be unexpected for a nine year old child, even one who had been exposed to pornography" (Pet'r's App'x 12); (3) Jones's live-in fiancée stated that she believed D.R. had been molested, but not by Jones (Pet'r's App'x 20); and (4) when officers questioned Jones about the dictionary incident, Jones "made light of the situation, and applauded [D.R.] for having a good memory" (Pet'r's App'x 21).

Lastly, although the Guilford records do impeach some of D.R.'s testimony, the Danville City Circuit Court was in the best position to examine the witness's credibility. At trial, D.R. was extremely reluctant to testify as to Jones's actions, but she repeatedly acknowledged an understanding that she must tell the truth, and she even corrected defense counsel by stating, unequivocally, that Jones's finger did penetrate her vagina. Trial Tr. 30-44, 107 (The trial court took a recess after D.R. initially struggled to answer the Commonwealth's questions, but when defense counsel stated that Jones had placed his hand "on" her privates, D.R. responded that he had actually touched her "in" her privates.). D.R. also described general events that occurred on the days of the sexual assaults, recalling details such as movies and television shows watched, food eaten, and general activities.

Rasmussen acknowledged that she could not determine precisely what type of penetration had occurred. Trial Tr. 118-121.

Jones also claims that, contrary to testimony at trial, D.R. did not report that Jones engaged in either oral or vaginal penetration in the Guilford records. However, D.R. states that Jones "finger[ed]" her, made her "lick" or "suck" his penis, and that Jones made her lift her feet so that he could "lick [her] things and stick it up [her]." Pet'r's App'x 13-15. Regardless of some inconsistency between the Guilford records and D.R.'s testimony, the record does not support Jones's allegation that some impeachment as to the manner of penetration would have changed the outcome of the trial.

Lastly, Jones concludes that differences in the medical reports prepared by Dr. Stanley and Nurse Rasmussen show that the testimony was unreliable. However, beyond his own conclusory allegations, Jones has not proffered any evidence demonstrating that the difference is material. See Nickerson v. Lee, 971 F.2d 1125, 1135 (4th Cir. 1992) ("Bare allegations" of constitutional error are not sufficient grounds for habeas relief; the petitioner must proffer evidence to support his claims.). Further, the reports do not actually appear contradictory: Dr. Stanley reported a tear at the 6 o'clock position on D.R.'s hymen, and Nurse Rasmussen reported a healed tear at the 7 o'clock position and scarring at the 6 o'clock position. Trial Tr. 117-18.

Both Claims B and C are without merit. On habeas review, the Supreme Court of Virginia held that neither claim satisfied Strickland's prejudice prong because Jones could not show that the Guilford records were material. Jones, No. CL12-596, slip op. at 3. The court agrees, because Jones has failed to demonstrate that, if counsel moved for a new trial or subpoenaed the Guilford records prior to trial, the outcome of the proceedings would have been

different. Therefore, the state court's ruling was not contrary to, or an unreasonable interpretation of, Strickland, or an unreasonable determination of the facts.

## V. Conclusion

For the reasons stated, the court will grant the motion to dismiss. All claims are without merit. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for Respondent.

ENTER: This 18th day of October, 2017.

_____
United States District Judge